ROB BONTA
Attorney General of California
RHONDA L. MALLORY
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9567
  Fax: (619) 645-2581
  E-mail:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendants Officer Robert
Manzano, Officer Ryan Parrish, and
Officer Jorge Macias*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **CAMILO PINEDA,**<br><br>                                   Plaintiff,<br><br>**v.**<br><br>**OFFICER MANZANO (#19595) and DOES 1 TO 10,**<br><br>                                   Defendants. | 2:21-cv-08839-GW-JPRx<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Date:  March 12, 2024<br>Time:  09:00 a.m.<br>Courtroom:  9D<br>Judge:  The Honorable George H. Wu<br><br>Action Filed: 11/10/2021 |

**TO THE ABOVE-ENTITLED COURT AND TO PLAINTIFFS:**

Defendants Officers Robert Manzano, Ryan Parrish, and Jorge Macias

respectfully submit the following Trial Brief[1]:

---

[1] Defendants also filed a Memorandum of Contentions of Fact and Law (ECF No. 75) in this action and cross-reference that document as providing a detailed discussion of the elements of the claims and defenses.

# TABLE OF CONTENTS

**Page**

CLAIMS ...................................................................................................... 1

    I.     Summary of Plaintiff's Claims ..................................................... 1

DEFENDANTS' POSITION ....................................................................... 2

    I.     Defendants Used Reasonable Force to Conduct the Arrest and Did Not Act with Any Bias Against Plaintiff ...................................... 2

         A.    Defendants' Primary Factual Contentions................................. 3

KEY ISSUES AND PRINCIPLES OF LAW .............................................. 6

    I.     Qualified Immunity for Federal Claim .................................... 6

    II.    Plaintiff's Unruh Act Claim Is Untenable .............................. 8

    III.   Battery Claim .......................................................................... 12

    IV.   Ralph Act Claim ..................................................................... 13

    V.    Bane Act Claim ...................................................................... 13

BIFURCATION OF ISSUES ..................................................................... 14

CONCLUSION.......................................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Alston v. Read*
663 F.3d 1094 (9th Cir. 2011) ................................................................. 7

*Anderson v. Creighton*
483 U.S. 635 (1987) ................................................................................ 7

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) ................................................................................ 7

*Beverly v. Orange County Sheriff*
SA CV 20-797-JGB, 2020 WL 5834282 (C.D. Cal. Aug. 3, 2020) .................. 9

*Brennon B. v. Superior Court*
13 Cal. 5th 662 (2022) .......................................................................... 11

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*
654 F.3d 975 (9th Cir. 2011) ................................................................. 8

*C.O. v. County of Kern*
1:20-cv-1338 JLT BAK, 2022 WL 286544 (E.D. Cal. Jan. 31, 2022) ......................................................................................... 10

*Cavagna v. Clearlake Police Dept.*
23-cv-01686-KAW, 2023 WL 7346372 (N.D. Cal. Nov. 6, 2023) ....... 10, 11, 12

*Estate of Nunis v. City of Chula Vista*
F. Supp. 3d (S.D. Cal. June 9, 2023) .................................................. 13

*Garcia v. City of Merced*
637 F. Supp. 2d 731 (E.D. Cal. 2008) ................................................. 13

*Goff v. Bise*
173 F.3d 1068 (8th Cir. 1999) ............................................................... 7

*Hill v. Mckinley*
311 F.3d 899 (8th Cir. 2002) ................................................................. 7

*J.P. v. City of Porterville*
801 F. Supp. 2d 965 (E.D. Cal. 2011) ................................................. 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Johnson v. Breeden*

4

   280 F.3d 1308 (11th Cir. 2002) .......................................................................... 6

5

*Johnson v. Cnty. of L.A.*

6

   340 F.3d 787 (9th Cir. 2003) ............................................................................ 13

7

*Knapps v. City of Oakland*

8

   647 F. Supp. 2d 1129 (N.D. Cal. 2009) ........................................................... 13

9

*Lampkins v. Thompson*

   337 F.3d 1009 (8th Cir. 2003) ........................................................................ 6, 7

10

*McGee v. Poverello House*

11

   1:18-cv-00768-LJO-SAB, 2019 WL 5596875 (E.D. Cal. Oct. 30,

12

   2019) .................................................................................................................. 10

13

*Pearson v. Callahan*

14

   555 U.S. 223 (2009) ............................................................................................ 8

15

*Plumhoff v. Rickard*

16

   572 U.S. 765 (2014) ............................................................................................ 7

17

*Reese v. Cnty. of Sacramento*

   888 F.3d 1030 (9th Cir. 2018) ......................................................................... 13

18

*Reichle v. Howard*

19

   566 U.S. 658 (2012) ............................................................................................ 8

20

*Saucier v. Katz*

21

   533 U.S. 194 (2001) ............................................................................................ 7

22

*Smith v. BP Lubricants USA Inc.*

23

   64 Cal. App. 5th 138 (2021) ............................................................................. 10

24

*Sorrels v. McKee*

25

   290 F.3d 965 (9th Cir. 2002) .............................................................................. 7

26

*Stephenson v. Doe*

   332 F.3d 68 (2d Cir. 2003) ................................................................................. 6

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Stevens v. Optimum Health Institute – San Diego*
   810 F. Supp. 2d 1074 (S.D. Cal. 2011) ................................................................. 10

*Trujillo v. County of Los Angeles*
   CV 14-5431 2014 WL 12910367 (C.D. Cal. Oct. 2, 2014) ................................... 9

*Wilkins-Jones v. County of Alameda*
   859 F. Supp. 2d 1039 (N.D. Cal. 2012) ................................................................. 9

**STATUTES**

42 U.S.C.
   §1983 ................................................................................................................ 1, 2, 6

California Penal Code
   § 148(a) ...................................................................................................................... 3
   § 148(a)(1) ................................................................................................................ 3
   § 834a ...................................................................................................................... 12
   § 835 ........................................................................................................................ 12
   § 835a(b) ................................................................................................................. 12

California Civil Code
   § 51 ............................................................................................................ 1, 8, 9, 10
   § 51.7 ......................................................................................................................... 1
   § 52 ....................................................................................................................... 1, 8
   § 52.1 ......................................................................................................................... 2
   § 52.4 ................................................................................................................... 2, 13

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ......................................................................................... 1, 13

**COURT RULES**

Rule 50 ........................................................................................................................ 6

Rule 50(a) ............................................................................................................... 7, 8

Rule 50(b) .................................................................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

Page

**OTHER AUTHORITIES**

CACI 3060 ............................................................................................................. 9

**CLAIMS**

**I.    SUMMARY OF PLAINTIFF'S CLAIMS**

The operative pleadings are the Second Amended Complaint (ECF No. 54) [SAC], the Answer by Defendant Officer Manzano to the Second Amended Complaint (ECF No. 58), and the Answer by Defendants Officers Parrish and Macias to the Second Amended Complaint (ECF No. 70).  The following claims remain to be tried:

**1. Count 1 of the SAC:** The first count of the SAC is a 42 U.S.C. § 1983 claim of excessive force in violation of Plaintiff Camilo Pineda's Fourth Amendment rights.  Plaintiff claims all three officers used excessive force in the course of arresting him[2] at the Glendale Department of Motor Vehicles (DMV) Office on November 25, 2020.

**2. Count 3 of the SAC:**  This is a state law claim for alleged violation of Civil Code sections 51 and 52 (i.e., an Unruh Act claim).  Plaintiff contends that the officers violently interfered with his rights based on bias against Plaintiff's gender identity and expression.

**3. Count 4 of the SAC:**  Plaintiff alleges a claim that all three officers committed battery against Plaintiff under state law.

**4. Count 5 of the SAC:**  Plaintiff alleges a state law claim of false imprisonment in count five.  Plaintiff contends that there was an unnecessary delay in taking Plaintiff before a judge or in releasing Plaintiff.

**5. Count 6 of the SAC:**  In count six, Plaintiff asserts a claim for violation of Civil Code section 51.7 (the Ralph Act).  Plaintiff alleges the three officers used violence against Plaintiff based on Plaintiff's gender identity and expression.

---

[2] Plaintiff Camilo Pineda is transgender and commonly uses the pronouns they and them.  However, at deposition, Plaintiff also indicated that he would accept the pronouns of he and him.  For purposes of clarity in this document, the pronouns of he and him will be used to refer to Plaintiff.  He will also be referred to as Pineda at times.

**6. Count 7 of the SAC:**  Count seven is a claim for alleged gender-motivated violence in violation of Civil Code section 52.4.  Plaintiff claims the three officers assaulted and battered Plaintiff based on Plaintiff's gender identity and expression.

**7. Count 8 of the SAC:**  Plaintiff asserts a Bane Act claim (Civ. Code, § 52.1) in count eight, alleging that the officers used threats, intimidation, and coercion to interfere with Plaintiff's federal constitutional and state law rights.

Although the case initially included a 42 U.S.C. § 1983 claim for wrongful arrest, such claim was previously dismissed on motion for summary adjudication.  (See ECF No. 64.)  Thus, the essential factual issues to be tried in this case are the elements of the above-stated claims, which center on Plaintiff's contention that the Defendant officers used excessive force in conducting the lawful arrest.  In addition, Plaintiff brings various claims that the force used was wrongful not only because it was unreasonable or excessive but that it was motivated by a bias against Plaintiff's gender identity, gender expression, and transgender status.

## DEFENDANTS' POSITION

**I.   DEFENDANTS USED REASONABLE FORCE TO CONDUCT THE ARREST AND DID NOT ACT WITH ANY BIAS AGAINST PLAINTIFF**

Defendants challenge all elements of Plaintiff's claims, except for the admission that Defendants were acting under color of state law and in the scope of their employment for the California Highway Patrol.  Defendants did not use excessive force.  Defendants did not act with any bias against Plaintiff's gender identity, gender expression, or transgender status.

Since the lawfulness of the arrest is not at issue, the salient factual circumstances for trial begin with the point at which Officer Manzano began telling Plaintiff to turn around for the purpose of being arrested at the Glendale Department of Motor Vehicles Office on November 25, 2020.

## A.    Defendants' Primary Factual Contentions

While at the DMV Office pursuant to a call from DMV management, Officer Manzano formed probable cause to arrest Plaintiff for a misdemeanor offense of delaying or obstructing a peace officer in the course of his duties (Cal. Pen. Code § 148(a)(1).[3]  Officer Manzano instructed Pineda to face away from Officer Manzano, who intended to then place Pineda under arrest.  Pineda repeatedly refused these instructions.  After unsuccessful efforts to gain control of Pineda to arrest him, Officer Manzano called for backup.  Eventually Officers Parrish and Macias arrived and assisted Officer Manzano in placing handcuffs on Pineda and placing him under arrest.  Pineda was then escorted to a patrol vehicle.  Defendants contend that Pineda actively struggled against and resisted their efforts to bring him to the patrol car and to place him inside the car.

After Pineda was secured inside the patrol vehicle, he was moved down the street while the officers awaited the arrival of Sergeant Amaya.  The officers wanted to eliminate the disturbance that was occurring in front of the DMV customers (who were waiting outside due to COVID-19 restrictions) by Pineda's yelling.  After Sergeant Amaya arrived at this location, he spoke to Pineda.  While Sergeant Amaya was speaking to Pineda, Officer Manzano was about 30 to 40 feet away completing paperwork on the hood of a patrol vehicle.  This paperwork was related to this arrest.  Officer Manzano also called a couple of jails but was unable to get permission from either of them for taking Pineda into their facility because of COVID.  Sergeant Amaya subsequently directed that Pineda be cited and released on his own recognizance.  Officer Manzano issued Pineda a citation for a violation of Penal Code section 148(a).

The video evidence available for the incident does not show any of the officers using excessive force.  Rather, the video that actually captured contact between

---

[3] Unless necessitated by issues arising during trial testimony, the present plan is for the jury to be informed by stipulation that Plaintiff was lawfully subject to arrest for a nonviolent misdemeanor.

Pineda and the officers shows Pineda actively physically resisting efforts to be handcuffed and escorted to the patrol vehicle.  Pineda will present his own cell phone video that he took with his cell phone held up in the air above his head during Officer Manzano's initial effort to handcuff him.  However, this does not show the actual physical contact or Officer Manzano using any force at all.  It also reveals that Officer Manzano was speaking politely and calmly to Pineda and trying to calm him down and get him to comply.  The worst that can be assumed from the video is that Officer Manzano was trying to restrain Pineda from moving in an effort to proceed to handcuffing.  Plaintiff intends to testify that while he was taking video, Officer Manzano was repeatedly pushing him against the wall of the DMV Office.  Officer Manzano will testify this never happened, and Pineda has no marks consistent with allegedly being shoved against a wall.  In addition, all three officers are going to testify that they never used any inappropriate force against Pineda. They never punched or brutalized him as he claims.  Pineda has claimed that, after he was placed in the patrol car, one or more officers were punching him in the chest.  This never happened.

Pineda has no evidence other than speculation that any officer was biased against him because of transgender status.  He never heard any officer actually make any adverse or negative statements pertaining to his gender.  He never revealed to any of the officers that he was at the DMV to change the gender identification on his driver's license.  He claims that, before the Sergeant arrived, two or more officers passed around his driver's license and that they were pointing at him and laughing.  There is no video or audio evidence to corroborate this. Pineda specifically admitted at deposition that he has no basis for saying that Officer Manzano was one of these officers.  When asked at deposition to describe what the officers who were laughing looked at, he answered "I've repeatedly stated that I can't recall much of what they looked like, and I can't recall which specific officers where there or pull up --."

Pineda also claims that he was forced to stay in a hot police car for hours before being released.  Defendants lawfully arrested Mr. Pineda.  Defendants will introduce evidence showing that Mr. Pineda was held for a reasonable period of time while a sergeant responded to the scene and interviewed him.  At the same time, Officer Manzano was preparing paperwork related to the arrest and contacting jail facilities to see if any would accept Plaintiff during the COVID period.  Also, photographs and video were taken of Plaintiff at the scene.  All of these were reasonable activities, and Plaintiff was not held for an unreasonable period of time.

Pineda intends to present the testimony of an expert in discrimination against transgender persons.  This witness is Jennifer Orthwein, Ph.D., J.D.  Defendants challenge the admissibility of many of Dr. Orthwein's opinions on liability issues.  These objections are discussed in the Parties' Joint Briefing on Scope of Expert Witness Testimony (ECF No. 90).  In short, Dr. Orthwein should not be able to opine that, because there are articles or studies that report alleged bias in policing against transgender persons, the Defendant officers are statistically likely to have themselves been so biased.   Also, Dr. Orthwein intends to testify about her subjective interpretation of mistakes Officer Manzano made in the police report and in his deposition about the pronouns to use to identify Pineda.  Dr. Orthwein intends to opine that she can tell from these mistakes that Officer Manzano harbored a biased state of mind.  As noted by Defendants in ECF No. 90, this is improper expert testimony.

The officers will also testify that they never stood around laughing at Pineda's license, that they never engaged in any conduct disparaging Pineda's gender identity or expression, and that they harbored no bias against Pineda.

**Defense Expert Evidence:**

Defendants will be calling police practices expert Greg Meyer.  Mr. Meyer provides well-substantiated opinions that all of the officers' actions were in compliance with and comported with accepted police practices and procedures.  No

excessive force was used.  Mr. Meyer is aware of and has seen photographs showing minor scratches or marks on the back of Plaintiff's arms and on the top of one of his shoulders.  These marks are entirely consistent with the limited force that the officers are shown using in video.  Pineda's photographs of his wrists do not show anything other than the common redness that one sees from being in handcuffs.  Several of the photographs taken by both the CHP and by Pineda's friends (later that day) show multiple scars from apparent cuts on Plaintiffs' arms.  However, these are scars from events in Pineda's past.  They were not fresh injuries.

## KEY ISSUES AND PRINCIPLES OF LAW

### I.   QUALIFIED IMMUNITY FOR FEDERAL CLAIM

Defendants plan to raise the defense of qualified immunity by Rule 50 motion for Plaintiff's 42 U.S.C. § 1983 § claim for excessive force.  If raised after the close of evidence, the qualified immunity defense may require special interrogatories. "In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).  "Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

The doctrine of qualified immunity shields a government official from liability for monetary damages unless the plaintiff establishes "(1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).

The defense of qualified immunity remains available at trial.  *Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003); *Hill v. Mckinley*, 311 F.3d 899, 902 (8th Cir. 2002); *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).  Most likely this defense will be raised in the instant case through Rule 50(a) and (b) motions.  However, depending on the outcome of evidence, special interrogatories to the jury may also be proposed to assist the Court in making the determination as to qualified immunity.

Although qualified immunity is categorized as an affirmative defense, Plaintiff has the burden to demonstrate the second tier of the analysis – i.e., infringement of a "clearly established" right; if plaintiff fails to do so, defendant prevails.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) ("The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong."); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) ("[Plaintiff] bears the burden of showing that the right at issue was clearly established.").

In order to violate clearly established law, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  While this does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question **beyond debate.**"  *Ashcroft v. al-Kidd*, 563 U.S. at 741 (emphasis added).  Clearly established law must come from clear "'controlling authority' or a 'robust consensus of cases of persuasive authority.'" *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741-742).  Also, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Courts have the discretion to decide which prong of this analysis to address first under the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A decision in the defendant's favor on either prong establishes qualified immunity, even without consideration of the other prong. *See Reichle v. Howard*, 566 U.S. 658, 663 (2012); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 986 (9th Cir. 2011).

No clearly established law shows, beyond debate, that Officers Manzano, Parrish, and Macias acted in an objectively unreasonable manner in the manner in which Mr. Pineda was detained and arrested, handcuffed, escorted to the vehicle, placed in the vehicle, and transported nearby for a sergeant to respond.

## II.   PLAINTIFF'S UNRUH ACT CLAIM IS UNTENABLE

Count 3 of the SAC is a state law claim for alleged violation of Civil Code sections 51 and 52 (i.e., an Unruh Act claim). Plaintiff contends that the officers violently interfered with his rights based on bias against Plaintiff's gender identity and expression. At trial, this count should be subject to a motion for judgment as a matter of law in Defendants' favor under Rule 50(a) and/or (b) of the Federal Rules of Civil Procedure. This is because Plaintiff will not be able to establish that the Defendant officers or their employer constituted a business establishment, which is a requirement for a violation of California Civil Code § 51. Plaintiff mistakenly contends that that the relevant business establishment is the DMV; however, the questions in an Unruh Act claim are whether the alleged defendant is a business establishment and whether that defendant has denied its services to the plaintiff for discriminatory reasons.

To be sure, Civil Code § 51 reads, in pertinent part, as follows (emphasis added by italics):

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital

8

status, sexual orientation, citizenship, primary language, or
immigration status are entitled to the full and equal accommodations,
advantages, facilities, privileges, or services in all *business*
*establishments* of every kind whatsoever.

Thus, the prohibition against discrimination found in Civil Code § 51 applies
only to business establishments.  *Beverly v. Orange County Sheriff*, SA CV 20-797-
JGB (PJW), 2020 WL 5834282, at *4 (C.D. Cal. Aug. 3, 2020) (citing *Wilkins-*
*Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012); *Trujillo*
*v. County of Los Angeles*, CV 14-5431 PSG (MRWx), 2014 WL 12910367, at *6
(C.D. Cal. Oct. 2, 2014).  As noted in *Wilkins-Jones,* the elements for an Unruh Act
claim were historically stated as follows:

"To prevail on [a] disability discrimination claim under the Unruh
Civil Rights Act, [a] plaintiff must establish that (1) [s]he was denied
the full and equal accommodations, advantages, facilities, privileges,
or services in a *business establishment*; (2) [her] disability was a
motivating factor for this denial; (3) defendants denied plaintiff the full
and equal accommodations, advantages, facilities, privileges, or
services; and (4) defendants' wrongful conduct caused plaintiff to
suffer injury, damage, loss or harm."  *Johnson v. Beahm*, No. 2:11–cv–
0294–MCE–JFM, 2011 WL 5508893, at *4 (E.D.Cal. Nov. 8, 2011)
(citing California Civil Jury Instructions (BAJI), No. 7.92 (Spring
2009)).

*Wilkins-Jones*, 859 F. Supp. 2d at 1048 (italics added).

However, as shown above, the modern CACI 3060 instruction for an Unruh
Act claim no longer includes reference to "business establishment."  This is not
because the "business establishment" element no longer applies.  Rather, as
explained in the Directions for Use of CACI 3060, the element of "business
establishment" has been eliminated from the instruction because whether the

9

defendant is a business establishment is an issue of law that is unlikely to go to the jury.  State case law makes this clear: "Whether a defendant is a 'business establishment' is an issue of law that [the court] may decide." *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 152 (2021) (citing *Rotary Club of Duarte v. Bd. of Directors*, 178 Cal. App. 3d 1035, 1050 (1986)).  Federal case law confirms that the issue is a matter of law to be decided by the courts.  *C.O. v. County of Kern*, 1:20-cv-1338 JLT BAK (EPG), 2022 WL 286544, at *4 (E.D. Cal. Jan. 31, 2022) ; *McGee v. Poverello House*, 1:18-cv-00768-LJO-SAB, 2019 WL 5596875, at *4 (E.D. Cal. Oct. 30, 2019).  "'California decisions consistently have treated the issue whether a particular kind of entity constitutes a "business establishment" for purposes of section 51 as a question of statutory interpretation to be decided by the court.'"  *Stevens v. Optimum Health Institute – San Diego*, 810 F. Supp. 2d 1074, 1084 (S.D. Cal. 2011) (quoting *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 607 n. 7 (1995)).

In the present case, Mr. Pineda brings civil rights claims against three CHP officers who arrested Plaintiff on November 25, 2020.  Thus, the question is whether the CHP and its officers conducting law enforcement activities such as the ones at issue here can be considered a "business establishment" within the meaning of California Civil Code § 51.  Federal case law shows that police departments and their officers engaged in such law enforcement activities are not business establishments under the Unruh Act.

In the case of *Cavagna v. Clearlake Police Dept.*, 23-cv-01686-KAW, 2023 WL 7346372, at *1 (N.D. Cal. Nov. 6, 2023), the plaintiffs sued the Clearlake Police Department, one of its police officers (Officer Brittany Shores), the California Highway Patrol, and other entities.  The plaintiffs were surviving relatives of Jesse Cavagna who suffered from schizophrenia and disappeared in September 2022.  *Ibid.*  The plaintiffs claimed that the defendants failed to conduct a sufficient search for their decedent, whose body was ultimately found on October

29, 2022.  *Id.* at *1-2.  One of the claims asserted by the plaintiffs was for an alleged violation of the Unruh Civil Rights Act by Defendants Clearlake Police Department, City of Clearlake, Lake County, Lake County Behavioral Health, and the CHP.  *Id.* at *2, 11.  In their motions to dismiss, the defendants argued that the business establishment requirement of the Unruh Act cannot be established for governmental entities accused of failing to properly search for the decedent or to take him into custody.  *Id.* at *11-12.  The *Cavagna* Court was aware of and applied the reasoning of *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 675 (2022).  *Cavagna*, 2023 WL 7346372, at *11 (noting: "In Brennon B., the California Supreme Court found that school districts are not business establishments for the purposes of the Unruh Act when educating students, explaining that '[w]hile the phrase "all business establishments of every kind whatsoever" must be interpreted as broadly as reasonably possible, its scope remains limited to entities acting as private business establishments.'")

Applying the *Brennon B.* analysis, *Cavagna* reasoned as follows with respect to the police activities at issue in the plaintiffs' claims:

> Here, there is no suggestion Defendants were engaged in business functions, such as "conducting business transactions with the public" or "enhance[ing] economic value" of a commercial enterprise, when they failed to search for Decedent or take him into custody.  *Compare with Frazier v. City of Fresno*, No. 1:20-cv-01069-ADA-SAB, 2023 WL 4108322, at *70, 2023 U.S. Dist. LEXIS 107702, at *221 (E.D. Cal. June 21, 2023) (finding that the city was not engaged in business functions based on its lease of a portion of a park).  Rather, the instant case concerns Defendants' traditional government functions, namely police work and/or assisting in the search of a missing person.  *See White v. City & Cty. of W. Sacramento*, No. 2:20-cv-02383-MCE-AC, 2021 WL 4068009 at *4, 2021 U.S. Dist. LEXIS 169427 at *11 (E.D.

Cal. Sep. 7, 2021) (finding the Unruh Act did not apply to police departments); *Sandoval v. City of Nat'l City*, No. 22CV1657-GPC(AGS), 2023 WL 1453157 at *10–11, 2023 U.S. Dist. LEXIS 17268 at *26 (S.D. Cal. Feb. 1, 2023) (finding no authority where the Unruh Act applied to police departments and no explanation of how the police were engaged in businesslike activity during an incident where the police allegedly used a police dog and shot the decedent rather than fully assessing and de-escalating the situation); *Raiser v. City of Murrieta*, No. EDCV 19-183-DSF (KK), 2021 WL 4202516 at *8, 2021 U.S. Dist. LEXIS 176795 at *22 (C.D. Cal. June 7, 2021) (finding that the plaintiff failed to explain how the police officer was engaged in commercial activity when he detained the plaintiff).

*Cavagna*, 2023 WL 7346372, at *12.

Accordingly, *Cavagna* dismissed the plaintiffs' Unruh Act claims with prejudice.  Here, no different result should follow at trial.  Mr. Pineda's Unruh Act claims are based on the Defendants' exercise of law enforcement activities, particularly arresting and handcuffing Mr. Pineda, placing him in a patrol car, having a Sergeant respond and talk to him, determining whether he would be taken to jail or released, and citing him for a suspected offense.  Such activities by CHP officers do not constitute the activities of a business establishment.

## III. BATTERY CLAIM

A battery claim is subject to California Penal Code § 834a, which provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."  Also, California Penal Code § 835 provides: "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer.  The person arrested may be subjected to such restraint as is reasonable for his arrest and detention."  California

Penal Code § 835a(b) provides: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect the arrest, to prevent escape, or to overcome resistance."

A battery claim is a state tort counterpart to a Fourth Amendment excessive force claim. Without a finding of excessive force, there is no liability for state law battery. *J.P. v. City of Porterville*, 801 F. Supp. 2d 965, 992 (E.D. Cal. 2011); *see also Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir. 2003). A plaintiff making a battery claim against a peace officer has the burden of proving that the officer used unreasonable force. *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1166 (N.D. Cal. 2009); *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 748 (E.D. Cal. 2008)

## IV.   Ralph Act Claim

Where there is an absence of evidence that a defendant's conduct was motivate by protected class animus, a Ralph Act claim cannot be sustained. *Estate of Nunis v. City of Chula Vista,* ___ F. Supp. 3d ___, 2023 WL 3940563, at *10 (S.D. Cal. June 9, 2023)  The same principle should apply to Plaintiff's gender violence claim under California Civil Code section 52.4

## V.   Bane Act Claim

A Bane Act claim requires a showing of "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043-45 (9th Cir. 2018) (quoting *Cornell v. City of San Francisco*, 17 Cal. App. 5th 799, 801 (2017)). Defendants Manzano, Parrish, and Macias contend Plaintiff cannot produce evidence showing they held any such specific intent. There is no evidence that the officers intended their use of force to be "more than necessary under the circumstances." *Reese*, 888 F.3d at 1045

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BIFURCATION OF ISSUES

Counsel for Defendants and Plaintiff have discussed and requested that the Court bifurcate liability and damages issues.  Defendants propose that, at a minimum, any questions regarding punitive damages should be done in bifurcated phases.

## CONCLUSION

Defendants adamantly dispute all of Plaintiff's claims and intend to provide testimony and exhibits refuting such claims.

Dated:  March 5, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
RHONDA L. MALLORY
Supervising Deputy Attorney General

/s/ *Douglas E. Baxter*
DOUGLAS E. BAXTER
Deputy Attorney General
*Attorneys for Defendants Officer Robert Manzano, Officer Ryan Parrish, and Officer Jorge Macias*

SD2021802625
66626103.docx

14

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Officer Robert Manzano, Officer Ryan Parrish, and Officer Jorge Macias, certifies that this brief contains 4485 words, which [choose one]:

X complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated:  March 5, 2024                    Respectfully submitted,

ROB BONTA
Attorney General of California


/s/ Douglas E. Baxter
DOUGLAS E. BAXTER
Deputy Attorney General
Attorneys for Defendant California
Highway Patrol

# CERTIFICATE OF SERVICE

Case Name: **Camilo Pineda v. Officer Manzano, et al.**

No. **2:21-cv-08839-GW-JPRx**

I hereby certify that on <u>March 5, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' TRIAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 5, 2024</u>, at Los Angeles, California.

| J. Sissov | /s/ J. Sissov |
|-----------|---------------|
| Declarant | Signature     |

SD2021802625
66626126.docx